UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

WISCONSIN CLUB FOR GROWTH, INC.;
its individual board member, ERIC O'KEEFE;
ONE WISCONSIN NOW, INC.; and
SCOT ROSS, its executive director,

          Plaintiffs,

        v.                         Civil Action No.  10CV427

GORDON MYSE, Chair of the
Wisconsin Government Accountability Board;
THOMAS BARLAND, its Vice Chair; each
of its other members, MICHAEL BRENNAN,
THOMAS CANE, GERALD C. NICHOL, and DAVID G.
DEININGER; and KEVIN KENNEDY, its
Director and General Counsel; each only in his official
capacity,

          Defendants.

---

**COMPLAINT FOR DECLARATORY JUDGMENT AND FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

---

Wisconsin Club for Growth, Inc. ("Club for Growth") and One Wisconsin Now, Inc.

("One Wisconsin Now") along with a Club for Growth board member, Eric O'Keefe, and Scot

Ross, executive director of One Wisconsin Now (together, the "plaintiffs"), bringing this action

for declaratory and injunctive relief under 42 U.S.C. § 1983, allege that defendants, in their

official capacity as individual members of the Wisconsin Government Accountability Board and

collectively (together, the "G.A.B." or "defendants"), have violated or will violate their federal

civil rights under color of state law.  Specifically, the regulation the G.A.B. has just promulgated

violates the right to speak freely guaranteed by the First Amendment and the right to equal protection under the Fourteenth Amendment.

The corporate plaintiffs and organizations like them, for themselves and their supporters, regularly participate in public policy debates and the political life of this state – often robustly, through paid broadcast and print advertising and, increasingly, through their websites as well as news releases and other statements distributed by e-mail.  The plaintiffs rarely, if ever, agree with each other on issues.  However, they are co-plaintiffs because the state agency charged with administering the state's campaign finance laws has, instead, amended these state laws.  It has done so without legislative authority or direction, in violation of the plaintiffs' constitutional rights, and with astonishing overbreadth.  The administrative rule effective on August 1, 2010 subjects political speech, even personal e-mail communications, to regulation that has never been – and cannot be – subject to campaign finance regulation.

The state will conduct a primary election on September 14, 2010.  Thirty days before then, on August 16, 2010, the plaintiffs' corporate and individual speech becomes subject to regulation and – for violations of the new administrative rule, possible criminal penalties and prosecution – even though it does not expressly advocate the election or defeat of a clearly-identified candidate.  To avoid that, this Court should enter an injunction that prevents the application and enforcement of the administrative rule.  The plaintiffs will request such relief by promptly filing a motion for a preliminary injunction and for an expedited hearing, a supporting brief, a corresponding statement of facts, and affidavits in support of the plaintiffs' motion for injunctive relief.

## INTRODUCTION AND SUMMARY ALLEGATIONS

1.      Chapter 11 of the Wisconsin Statutes contains the state's laws for regulating campaign finance for state candidates and committees, and those individuals and organizations subject to Chapter 11's reach must abide by its registration and reporting requirements.

2.      At the heart of Chapter 11 is its definition of "political purpose" in Wis. Stat. § 11.01(16): when an act is *not* for a political purpose, the act is *not* subject to state campaign finance laws.

3.      The express advocacy standard articulated in *Buckley v. Valeo*, 424 U.S. 1 (1976), has been adopted by the Wisconsin legislature in the statutory definition of "political purpose" – "[a]cts which are for political purposes include . . . [t]he making of a communication which expressly advocates the election, defeat, recall or retention of a clearly identified candidate." Wis. Stat. § 11.01(16)(a)1.

4.      Absent from state campaign finance law is any regulation of issue advocacy – communications that do *not* expressly advocate the election or defeat of a clearly-identified candidate.  Instead, Wisconsin only regulates the statutorily-defined category of political speech that is express advocacy.

5.      Unlike Congress, in section 203 of the Bipartisan Campaign Reform Act (2 U.S.C. § 434(f)(3)(A)), the Wisconsin legislature has never adopted any limitation on, or registration or reporting obligation for, issue advocacy.

6.      While proposals repeatedly have been introduced to revise the definition of "political purpose," expanding the scope of state campaign finance law to try to regulate issue advocacy, none of these legislative proposals has ever been adopted.

7.      The G.A.B. has "general authority" over and the "responsibility for the administration of chs. 5 to 12, [and] other laws relating to elections and election campaigns. . . ." Wis. Stat. § 5.05(1).

8.      Under Wis. Stat. § 5.05(1)(f), the G.A.B.'s rule-making authority is limited to "[p]romulgat[ing] rules under ch. 227 [the administrative procedure act] applicable to all jurisdictions for the purpose of *interpreting or implementing the laws* regulating the conduct of elections or election campaigns or ensuring their proper administration."  (Emphasis added.) Notwithstanding the legislature's refusal to act, the G.A.B. has attempted to regulate issue advocacy by rule.

9.      This action challenges both the statutory authority of the G.A.B. to try unilaterally to regulate issue advocacy communications through its promulgation of a revised administrative rule in Wis. Admin. Code § GAB 1.28 ("GAB 1.28"), effective on August 1, 2010, as well as the constitutionality of GAB 1.28 itself.  (A copy of GAB 1.28 is attached as **Exhibit A**.)

10.     By state statute and administrative rule, individuals other than candidates and organizations other than political committees are generally subject to campaign finance regulation only when they:  a) make contributions or disbursements for a political purpose; or b) make a communication for a political purpose.  *See* GAB 1.28(2) (a section *not* amended).

11.     Through the language in the new subsection GAB 1.28(3)(b), the G.A.B. expands the scope of communications considered for a "political purpose" and, accordingly, for the first time attempts to regulate individuals other than candidates and organizations other than political committees when they are *not* engaged in express advocacy.

12.     GAB 1.28 violates the First and Fourteenth Amendments.  It subjects a speaker to state campaign finance law if the communication "supports or condemns" a clearly-identified

candidate's "position or stance on issues" or "that candidate's public record" and is made in the 30-day period prior to a primary election or the 60-day period prior to a general election (GAB 1.28(3)(b)) (collectively, these time periods are referred to as the "30/60 day preelection periods").  To do that:

   A. GAB 1.28 declares that all communications during the 30/60 day preelection periods that support or condemn a clearly-identified candidate's "position or stance on issues" or "that candidate's public record" are, by definition, made for a political purpose.

   B. GAB 1.28 declares that all communications during the 30/60 day preelection periods that support or condemn a clearly-identified candidate's "position or stance on issues" or "that candidate's public record" are, by definition, "susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate."

   C. GAB 1.28 declares that all communications during the 30/60 day preelection periods that support or condemn a clearly-identified candidate's "position or stance on issues" or "that candidate's public record" are, categorically, express advocacy communications.

  13. In promulgating the revised GAB 1.28, the G.A.B. has exceeded its statutory authority by broadening the definition of "political purpose" beyond that mandated by the state legislature in Wis. Stat. § 11.01(16).  The Wisconsin Statutes provide the G.A.B. with no authority to regulate communications that are not express advocacy.

  14. Club for Growth and One Wisconsin Now actively participate for and with their supporters in the public policy debate in Wisconsin.  They are virtually at opposite ends of the

ideological spectrum, however, with very different views on public policy.  Yet, they are united on one fundamental principle: the First Amendment guarantees the right to express – as freely and effectively as possible – their views on public issues and public officials as well as candidates for state public office.

15.     Club for Growth and One Wisconsin Now frequently make issue advocacy communications, including communications during the 30/60 day preelection periods that "support or condemn" a clearly-identified candidate's "position or stance on issues" or "that candidate's public record."

16.     The issue advocacy communications made by Club for Growth and One Wisconsin Now have *never* been subject to registration and reporting under Wisconsin's campaign finance laws.

17.     With the adoption of GAB 1.28, issue advocacy communications made by Club for Growth and One Wisconsin Now and by the individual plaintiffs will be subject to regulation under Chapter 11.

> A.     The plaintiffs will each be required to establish a separate depository account and transfer funds from their respective general treasuries to these depository accounts.  Wis. Admin. Code § GAB 1.91 (emergency rule effective May 20, 2010 through Oct. 16, 2010).

> B.     The plaintiffs must then register with the G.A.B. and file an oath for "independent disbursements" prior to making any communications subject to regulation under GAB 1.28.  Wis. Stat. §§ 11.05; 11.06(7).  In the oath, the plaintiffs must declare and disclose "all candidates who will be

supported or opposed by the independent disbursements." (A copy of the Oath (GAB-6) is attached as **Exhibit B**.)

C.      The plaintiffs will then be subject to periodic reporting requirements, including 24-hour reports during the 15 days prior to a primary or general election. Wis. Stat. §§ 11.12(5), 11.20.

D.      Moreover, a disclaimer must appear on each communication identifying the sponsor and declaring the independent nature of the communication and lack of coordination with a candidate for public office. Wis. Stat. § 11.30.

18.     The First Amendment ensures full and free political debate without regulation and, at its core, protects the rights of citizens to engage in unregulated political discourse, to promote shared political principles, and to engage in collective and individual speech aimed at public policy.

19.     The expanded scope of "political purpose" and regulation of issue advocacy communications in GAB 1.28 violate the First Amendment by regulating political speech. By expanding the scope of political speech and subjecting it to state campaign finance law, the G.A.B. stifles the plaintiffs' voices and imposes impermissible burdens and risks, inhibiting the effective and diverse expression of views on public issues.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) to hear the plaintiffs' claims for relief arising under the Constitution and under federal law, and it has supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear related claims under state law. It also has jurisdiction under 28 U.S.C. §§ 2201 and 2202, the Declaratory Judgments Act, to grant the declaratory relief requested by the plaintiffs.

21.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because the defendants are all residents of Wisconsin and because a substantial part of the events giving rise to the plaintiffs' claims arose or will arise in this district.  The G.A.B. is headquartered in Madison.

22.     The state's campaign finance laws and regulations are codified in Chapter 11 of the Wisconsin statutes and in Chapter GAB 1 of the Wisconsin Administrative Code, respectively.  The defendants, individually or in concert, will act under color of those state laws and regulations in administering and applying GAB 1.28, thereby denying the plaintiffs' rights under the Constitution.

23.     The plaintiffs' claims present a justiciable case and controversy ripe for judicial resolution.

24.     GAB 1.28 has been duly promulgated by the G.A.B. and was published on July 31, 2010 in the Wisconsin Administrative Register, No. 655.  The effective date of the revised rule is August 1, 2010.

25.     GAB 1.28 will have an immediate impact on Club for Growth, One Wisconsin Now and their officers, directors, and supporters in that they are actively making communications that would be subject to regulation under the revised rule – communications they have regularly made in the past without being subject to state campaign finance laws.

### PARTIES

*Plaintiffs*

26.     Club for Growth and One Wisconsin Now have a continuous, direct, and immediate interest in the state's public policy debates and political life.  So do Eric O'Keefe and Scot Ross in their roles with their respective organizations as well as individual citizens.

27.     Club for Growth and One Wisconsin Now continuously take public positions on issues of public interest and concern including, but not limited to, commenting on public policy

by providing information and a point of view.  These issue advocacy communications do not

expressly advocate the election or defeat of a particular candidate, nor are they coordinated with

a candidate.  However, these issue advocacy communications frequently support or condemn a

candidate's position or stance on issues or a candidate's public record, subjecting them to

regulation under GAB 1.28.

28.     Established in 2004, Club for Growth is a nonstock Wisconsin corporation,

recognized as a tax-exempt advocacy organization under section 501(c)(4) of the Internal

Revenue Code.

29.     Club for Growth is dedicated to informing, educating, and rallying citizens to

embrace and enact policies that lead to sustained economic growth, limited government, and

minimal taxation.  Its principal office is at 1223 West Main Street, Suite 304, Sun Prairie,

Wisconsin 53590.

30.     Eric O'Keefe resides in Spring Green, Wisconsin and is an individual supporter of

Club for Growth as well as a member of its board of directors, a position he has held since 2005.

31.     Established in 2005, One Wisconsin Now is a nonstock Wisconsin corporation,

recognized as a tax-exempt advocacy organization under section 501(c)(4) of the Internal

Revenue Code.  It also has an affiliated section 501(c)(3) charitable organization, the Institute for

One Wisconsin, Inc., that focuses on educational activities.

32.     One Wisconsin Now devotes itself to communicating with the public and public

officials messages that advance progressive values, ideas, and policies through a variety of forms

of advertising, training, networking, research, and education.  Its principal office is at 152 West

Johnson Street, Suite 214, Madison, Wisconsin 53703.

33.     Scot Ross resides in Madison, Wisconsin and is the executive director of One Wisconsin Now, a position he has held since 2007.

**Defendants**

34.     Defendants are the members and director of the G.A.B.  Gordon Myse is the G.A.B.'s chair, and Thomas Barland is its vice chair.  The G.A.B.'s four other members are Michael Brennan, Thomas Cane, Gerald C. Nichol, and David G. Deininger.  Kevin J. Kennedy is the G.A.B.'s director and general counsel.  The G.A.B.'s principal office is at 212 East Washington Avenue, Third Floor, Madison, Wisconsin 53703.

35.     The G.A.B. has enumerated, not plenary, administrative authority for the "administration" of state law involving "elections and election campaigns" under Wis. Stat. § 5.05.  It can issue subpoenas, bring civil actions for forfeitures, sue and be sued, issue advisory opinions, assist local government in administering elections, maintain voter registration lists, and generally engage in voter education.  It cannot make law.

36.     Through its members and staff, the G.A.B. has initiated and will continue to initiate enforcement actions against organizations and individuals for engaging in activity regulated under Chapter 11.  The G.A.B. also has the authority to retain both special investigators and special prosecutors to assist in the enforcement of the laws it administers.

37.     Each of the defendants is sued individually in his official capacity only and in no way personally.

## GENERAL ALLEGATIONS

38.     2007 Wisconsin Act 1 created a new agency, the G.A.B., to regulate elections, ethics, lobbying, and campaign finance in Wisconsin.  The G.A.B. replaced the Wisconsin State Elections Board and Wisconsin Ethics Board by merging the two agencies.  The G.A.B. consists of six members, each of whom by law is a former state judge.

39.     After it came into existence on January 10, 2008, the G.A.B. was required under 2007 Wisconsin Act 1, Section 209, to "reaffirm" all of the Elections Board's existing regulations, including Wis. Admin. Code § ElBd 1.28 ("ElBd 1.28").  (A copy of ElBd 1.28 is attached as **Exhibit C**.  In 2008, all Elections Board administrative rules that had been reaffirmed were renamed with a "GAB" designation.)

40.     Effective on June 1, 2001, ElBd 1.28 had been adopted by the Elections Board in response to the decision in *Elections Board v. Wisconsin Manufacturers & Commerce*, 227 Wis. 2d 650, 597 N.W.2d 721 (1999).

41.     ElBd 1.28(2)(c) defined an act for a "political purpose" and, by doing so, reiterated the communications considered express advocacy and subject to the registration and reporting requirements under Chapter 11.

42.     ElBd 1.28 did not attempt to regulate issue advocacy.

43.     On August 28, 2008, the G.A.B. voted to reaffirm the existing regulation, ElBd 1.28, providing guidance to individuals who are not candidates and organizations that are not political committees.

44.     After its vote at its August 28, 2008 meeting to reaffirm ElBd 1.28 in the form that it had been adopted by the Elections Board, the G.A.B. directed its staff to determine how it could expand the scope of ElBd 1.28 to also regulate issue advocacy communications – by definition, not covered by the existing rule it had just reaffirmed.

45.     On November 11, 2008, the G.A.B. directed its staff to promulgate an amendment to GAB 1.28 that would redefine political purpose specifically to regulate "so-called 'issue ads' now used in Wisconsin political campaigns."  (A copy of the G.A.B. minutes and the memorandum prepared for the November 11, 2008 G.A.B. meeting are attached as **Exhibit D.**  A

news release on the G.A.B.'s directive at the November 11, 2008 meeting to amend GAB 1.28 is attached as **Exhibit E**.)

46.     At its meeting on March 30, 2009, the G.A.B. voted to amend GAB 1.28 and adopt a revised version of the administrative rule.  (A copy of the G.A.B.'s news release from that day is attached as **Exhibit F**.)

47.     After a series of delays during the administrative rule promulgation process, the G.A.B. finally approved and adopted the revised GAB 1.28 on March 23, 2010.  (A copy of the G.A.B. minutes are attached as **Exhibit G**.)

48.     With its publication on July 31, 2010, and an effective date of August 1, 2010, GAB 1.28 will apply to issue advocacy communications beginning on August 16, 2010 – 30 days preceding the September 14, 2010 primary election.  (Attached as **Exhibit H** is a July 21, 2010 update from Kevin Kennedy on implementation of GAB 1.28.)

49.     GAB 1.28 will also apply to issue advocacy communications after the September 14 primary election and before the general election – 60 days preceding the November 2, 2010 general election.

50.     With "political purpose" redefined by the G.A.B., issue advocacy communications subject to regulation under GAB 1.28 will be considered an "independent disbursement" or "independent expenditure" under state campaign finance law.  As such, these issue advocacy communications will be subject to Chapter 11 as well as the G.A.B.'s other administrative rules.

51.     The Wisconsin Statutes do not provide the G.A.B. with any authority to regulate communications that are not express advocacy, nor does it provide any support for adopting GAB 1.28.

52.     GAB 1.28, on its face, violates the First and Fourteenth Amendments and deprives the plaintiffs of their federal civil rights because it regulates speech that the U.S. Supreme Court has declared not regulable as express advocacy.  *Federal Elections Comm'n v. Wisconsin Right to Life*, 551 U.S. 449, 469-70 (2007).

## CLAIMS FOR RELIEF

### First Claim – Lack of Statutory Authority for Regulating Issue Advocacy

53.     The plaintiffs incorporate by reference the allegations in paragraphs 1 through 52 above.

54.     No state law has been enacted expanding the scope of political speech subject to regulation to include issue advocacy communications.

55.     Instead, the Wisconsin legislature has not acted on a series of bills introduced in the last 10 years to redefine "political purpose" and broaden the term's scope to try to regulate issue advocacy communications.  (See bills, and relevant excerpts thereof, attached as **Exhibit I**.)

56.     Through GAB 1.28, the G.A.B. has done by administrative rule what the state legislature has been unwilling or unable to accomplish.  The administrative agency has exercised authority it does not have.

57.     In adopting GAB 1.28, the G.A.B. has redefined political purpose and developed an "expanded regulation" where no statutory authority exists.  The adoption of the rule, accordingly, is *ultra vires*.

### Second Claim – Impermissible Regulation of Issue Advocacy as an Independent Disbursement

58.     The plaintiffs incorporate by reference the allegations in paragraphs 1 through 57 above.

59.     By modifying the definition of "political purpose," GAB 1.28 imposes registration and reporting requirements on the plaintiffs and other speakers that make communications during the 30/60 day preelection periods when the communication "supports or condemns" a clearly-identified candidate's "position or stance on issues" or "that candidate's public record."

60.     Under GAB 1.28, these issue advocacy communications in the 30/60 day preelection periods will be regulated as independent disbursements (also known as "independent expenditures") even though the communications do not expressly advocate the election or defeat of a clearly-identified candidate.

61.     Deemed sponsors of independent disbursements by this rule, the plaintiffs and other speakers will be subject for the first time to the regulatory authority of the G.A.B. under Chapter 11.

62.     Subjecting the plaintiffs and other organizations and citizens to campaign finance regulation and the G.A.B.'s authority, when they have not sponsored express advocacy communications or engaged in any other activity otherwise regulated under Chapter 11, restrains and inhibits speech in violation of the First and Fourteenth Amendments.

**Third Claim – "Communication" Is Facially Unconstitutional for Overbreadth**

63.     The plaintiffs incorporate by reference the allegations in paragraphs 1 through 62 above.

64.     By including a new definition of "communication" in GAB 1.28(1)(b) that includes *all* forms of communications that may be utilized for a political purpose, the revised rule subjects *every* method of speech to regulation – including even the use of a $26 soapbox on a street corner or a $26 computer program.

14

65.     The G.A.B. has made no showing that such a broad definition of communication can prevent corruption or the appearance of corruption nor that it is narrowly tailored to do so.

66.     GAB 1.28 is substantially overbroad in the amount of protected speech that it reaches.

67.     Because of its overbreadth, GAB 1.28's definition of "communication" is unconstitutional on its face.

## RELIEF SOUGHT

**WHEREFORE**, Club for Growth, One Wisconsin Now, and the individual plaintiffs ask that the Court:

1.      Promptly declare GAB 1.28 unlawful as *ultra vires*, exceeding the scope of GAB's statutory authority as a violation of the plaintiffs' rights;

2.      Promptly declare GAB 1.28 unconstitutional and invalid as a violation of the plaintiffs' rights;

3.      Preliminarily and, then, permanently enjoin the G.A.B., and any one acting on its behalf or at its direction, from enforcing or in any way applying GAB 1.28;

4.      Award the plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988 and any other applicable statute or authority; and,

5.      Grant such other relief as the Court deems proper.

Dated:  July 31, 2010.

GODFREY & KAHN, S.C.


By:      *s/ Hannah L. Renfro*
         Mike B. Wittenwyler
         State Bar No. 1025895
         Hannah L. Renfro
         State Bar No. 1038324
         Brady C. Williamson
         State Bar No. 1013896

         *Attorneys for Plaintiffs*


P.O. Address
One East Main Street, Suite 500
P.O. Box 2719
Madison, Wisconsin  53701-2719
(608) 257-3911
(608) 257-0609 (fax)
wittenwyler@gklaw.com
hrenfro@gklaw.com
bwilliamson@gklaw.com


5212839_2