IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WISCONSIN CLUB FOR GROWTH, INC.,
ERIC O'KEEFE, ONE WISCONSIN NOW, INC.,
and SCOT ROSS,

Plaintiffs,

v.

GORDON MYSE, THOMAS BARLAND,
MICHAEL BRENNAN, THOMAS CANE,
GERALD C. NICHOL, DAVID G. DEININGER,
and KEVIN KENNEDY,

Defendants.

OPINION AND ORDER

10-cv-427-wmc

---

Plaintiffs Wisconsin Club for Growth, Inc., Erik O'Keefe (a board member of Wisconsin Club for Growth), One Wisconsin Now, Inc., and Scot Ross (One Wisconsin Now's executive director) filed the present lawsuit against the six members of the Wisconsin Government Accountability Board and Kevin Kennedy, G.A.B's Director and General Counsel, (collectively "G.A.B.") alleging that the newly amended Wis. Admin Code. § GAB 1.28 ("GAB 1.28") was invalid under state law and violated plaintiffs' First Amendment rights under the United States Constitution. At the same time, plaintiffs also filed a motion for a preliminary injunction and requested an expedited hearing and briefing schedule. (Dkt. ##5, 6.) Approximately one week later, and before G.A.B. had even filed its opposition brief to plaintiffs' motion for preliminary injunction, the parties filed a joint stipulation asking the court to enter an order permanently enjoining G.A.B. from enforcing GAB 1.28 as amended on the basis that the challenged language was invalid under state law. (Dkt. #22.)

There is no question that this is the appropriate court for parties to bring free speech and association claims under the First Amendment of the United States Constitution, but plaintiffs agreed to dismiss their First Amendment claims with prejudice upon entry of the injunction, disposing of all of plaintiffs' claims. As a result, the proposed stipulation and permanent injunction is expressly *not* premised on the plaintiffs' First Amendment rights; rather it is premised on a question of state law -- whether G.A.B. exceeded its authority in enacting GAB 1.28, rendering the amended regulation invalid.

Contrary to the parties' representation to this court, their proposed resolution of this case is neither "simple," nor "expeditious." To the contrary, the proposed permanent injunction is sweeping in its scope and puzzling in its substance. The injunction could effectively result in this federal court enjoining a state agency (G.A.B.) from requiring organizations engaged in issue advocacy to make financial disclosures in Wisconsin, albeit willingly for now, in perpetuity. This despite the fact that G.A.B. has within its own power the ability to refrain from enforcing, or removing altogether, the offending sentence from a regulation G.A.B. itself created. Certainly, removing the language -- for example, by G.A.B. issuing an emergency rule -- would be far more "simple and expeditious" than asking a federal court to permanently enjoin enforcement of the offending regulation.

Because the court finds that the parties have failed to establish that the proposed order for a permanent injunction is premised on a probable violation of federal law, and in deference to state courts on matters that essentially involve state law, this court denies

entry of the parties' proposed, stipulated order. Further, there is a pending state court action concerning the validity of the same regulation at issue here and because there is no threat of harm in light of the temporary injunction entered by the Wisconsin Supreme Court in that action, which enjoined enforcement of all amendments to GAB 1.28, this court will abstain and stay this action pending a determination by a state court on the validity of GAB 1.28 under state law.

BACKGROUND

Presently before the court is the parties' proposed, stipulated order permanently enjoining the enforcement of the second sentence of § GAB 1.28(3)(b) -- the new language plaintiffs allege is invalid under state law and violates their First Amendment rights. (Dkt. #22 at ¶ 1.) The parties further stipulated that the proposed injunction "resolves the First Claim of Plaintiffs' Complaint" -- that the regulation is invalid under state law because G.A.B. acted outside of the scope of its authority in enacting it. (*Id.* at ¶ 3.) Finally, the stipulation provides for plaintiffs to dismiss their First Amendment Claims -- the Second and Third Claims in their Complaint -- without prejudice. (*Id.* at ¶ 4.)

As referenced earlier, this is not the only case involving the legality of GAB 1.28. There are two other pending actions: one in state court and one in the Eastern District of Wisconsin. On August 9, 2010, a different set of plaintiffs filed a petition for original jurisdiction with the Wisconsin Supreme Court seeking similar temporary and permanent injunctive relief. *Wis. Prosperity Network v. Myse*, No. 2010AP001937 (Wis. Sup. Ct. Aug.

9, 2010). On August 13, 2010, the Wisconsin Supreme Court enjoined enforcement of the amendments to GAB 1.28 (which includes the second sentence of GAB 1.28(3)(b)). *Wis. Prosperity*, slip op. at 2 (Wis. Sup. Ct. Aug. 13, 2010). The Court, however, declined to grant the petition for original jurisdiction at that time, and the parties to the Wisconsin Supreme Court action are currently briefing whether the petition should be granted.

Wisconsin Right to Life, Inc. and its political action committee filed a complaint and a motion for preliminary injunction on August 5, 2010 against G.A.B. in the Eastern District of Wisconsin. *Wis. Right to Life, Inc. v. Myse*, No. 2:10-cv-00669-CNC (E.D. Wis. Aug. 5, 2010). G.A.B. filed a motion to abstain and stay the action pending the outcome of *Wisconsin Prosperity Network*. *Wis. Right to Life*, dkt. #22. In a recent decision, the court granted G.A.B's motion on similar grounds to that articulated by this court in denying plaintiffs' motion for a TRO and further articulated below in Part 2 of this opinion. *Wis. Right to Life v. Myse*, No. 10-cv-0669, 2010 WL 3732300 (E.D. Wis. Sept. 17, 2010).

In response to the parties' stipulation and proposed order, this court held a telephonic hearing on August 11, 2010, and issued an order seeking additional briefing on four issues:

a. Must the court find a probable violation of federal law in order to enter the proposed, stipulated injunction? *See Evans v. City of Chicago*, 10 F.3d 474, 480 (7th Cir. 1993) ("An alteration of the [state's] statutory scheme may not be based on consent alone; it depends on an exercise of federal power, which in turn depends on a violation of federal law. The district court therefore properly insisted on a demonstration of at least a probable violation of that law as a condition to the entry of this decree.") (quoting *Kasper v. Bd. of Educ. Comm'rs*, 814 F.2d 332, 340 (7th Cir. 1987)).

b. Since the parties are not asking the court to enter the injunction based on a violation of federal law, but rather to enter the injunction based on the invalidity of Wis. Admin. Code § 1.28 itself under Wisconsin law, is the court precluded from entering the proposed, stipulated permanent injunction in any event? *Id.*

c. Before entering a permanent injunction, should other public and private actors be given at least some opportunity to be heard? *See Assoc'n of Cmty. Orgs. for Reform Now (ACORN) v. Edgar*, 56 F.3d 791, 797 (7th Cir. 1995) ("[B]ecause an injunction may harm third parties to the litigation and impose administrative burdens on the judicial system, a court asked to grant an injunction has the power to refuse even when both parties are pressing it to grant the injunction, as in the case, more dramatic than this, in which the injunction is contained in a proposed consent decree."). For example, two legislative committees -- the Senate Committee on Labor, Elections and Urban Affairs and the Assembly Committee on Elections and Campaign Reform -- reviewed and reported taking no action on Wis. Admin. Code. § GAB 1.28. In addition, Wisconsin law purports to grant standing to "any elector" to sue for injunctive relief to compel compliance. Wis. Stat. § 11.66.

d. Do general federalism and comity concerns favor abstention by this court until the Wisconsin law issues are resolved, especially in light of the pending petition for original jurisdiction to the Wisconsin Supreme Court filed by other parties against the Government Accountability Board?

(Dkt. # 23.)

The parties have now briefed these additional issues.[1]

OPINION

**I. Requirement of Probable Violation of Federal Law**

The first question posed by the court is whether the court must find a probable violation of federal law under *Evans v. City of Chicago*, 10 F.3d 474, 480 (7th Cir. 1993), and *Kasper v. Board of Education Commissioners*, 814 F.2d 332, 342 (7th Cir. 1987), before

[1] The plaintiffs in the pending petition for original jurisdiction in the Wisconsin Supreme Court have also filed an *amicus* brief, urging this court to abstain pending resolution of the state validity question.

entering the parties' proposed permanent injunction. In *Evans,* the Seventh Circuit sitting *en banc* overturned a district court's entry of a consent decree, holding that "[u]nless there is a substantial claim under federal law, the district judge should not enter or continue to enforce a consent decree affecting the operation of a governmental body." *Evans*, 10 F.3d at 482. In so holding, the court relied on its own decision in *Kasper*, affirming a district court's refusal to enter a consent decree which was not premised on a violation of federal law. *Kasper*, 814 F.2d at 342.

The parties attempt to distinguish *Evans* and *Kasper* on two basis: (1) the "simple" settlement agreement here is different than the complex consent decrees at issue in those cases; and (2) various Supreme Court and other Seventh Circuit cases have not required a finding of a violation of law by the district court before entering consent decrees. Both attempts fail.

*First*, the defendants point out that the consent decrees at issue in *Evans* and *Kasper* imposed affirmative duties on state officials and ongoing supervision by the district courts. The materiality of this distinction is hard to discern here, since this court is being asked to enjoin G.A.B.'s enforcement of certain provisions of GAB 1.28 -- implicating the same federalism concerns that drove the Seventh Circuits *Evans* and *Kasper* decisions. Moreover, this court is also being asked to enjoin G.A.B. permanently, giving rise to the real possibility, if not likelihood, of involvement on an ongoing basis to resolve disputes regarding the scope of the injunction.

*Second*, defendants argue certain Supreme Court and Seventh Circuit cases suggest there is no rigid requirement that every consent decree issued by a federal court be

premised on a finding of a probable violation of federal law. *See Local No. 93 v. City of Cleveland*, 478 U.S. 501 (1986), *Lawyer v. Department of Justice*, 521 U.S. 567 (1997), and *Metro Housing Develop. v. Vil. of Arlington Hts.*, 616 F.2d 1006 (7th Cir. 1980). As an initial matter, none of these cases involve parties seeking a consent decree or stipulated order premised solely on state law grounds, much less asking for entry of an injunction stipulated to by the parties within days of the suits filing and before issue has even been joined. More importantly, none of these opinions reject the *Evans* requirement for a finding of a probable violation of federal law.

For example, *Local 93* and *Metro Housing* involve *no* state law claims, much less state claims as the basis for entering a consent decree. The consent decree in *Local 93* was also the culmination of *more than eight years* of lawsuits against the City of Cleveland over its alleged discriminatory hiring practices in which "the City had already unsuccessfully contested many of the basic factual issues." 478 U.S. at 506. Even then, the consent decree was the product of more than a year of negotiations, multiple fairness hearings in which an intervening local union opposing the decree was heard and then "40 hours of intensive negotiations under the [U.S.] Magistrate's supervision." *Id.* at 507-09. As a result, the only issue considered by the Supreme Court on *certiorari* review was the scope of relief awarded in the consent decree, not the district court's authority to enter a decree. *Id.* at 514-15.

In *Metropolitan Housing*, the Seventh Circuit considered "a consent decree terminating the *seven-year* Arlington Heights exclusionary zoning dispute." 616 F.2d at 1007 (emphasis added). And again the alternate decree was only entered by the district

court after three days of hearings and subsequent briefing to permit the intervening parties to present evidence and argument opposing the decree. Even with these protections, the Seventh Circuit found the propriety of entry of the consent decree a close question. *Compare* 616 F.2d at 1010-1015 (affirming decree based on strong federal policy embodied in Fair Housing Act and opportunity for intervener's objections to be heard) *with* 616 F.2d at 1015-21 (Pell, J.) (dissenting based on lack of adequate notice and opportunity for hearing accorded intervening communities, not the district court's authority to enforce decree pursuant to the Act).

Finally, *Lawyer* concerned a challenge to a settlement agreement between the U.S. Department of Justice and the State of Florida entered into after a *five year* dispute over legislative redistricting following the 1990 census, federal court-ordered mediation, notice and a formal hearing in federal court at which dissenters were allowed to challenge both the legal basis for and scope of the agreement. 521 U.S. at 569-75. Moreover, the issue for the Supreme Court in *Lawyer* was never over the jurisdictional authority of the district court to act pursuant to the Voting Rights Act of 1965, but rather the dissenters' claimed entitlement to formal adjudication of the unconstitutionality of a redistricting plan that the court was striking down in any event as part of the terms of the settlement agreement.

The contrast could hardly be more striking between the decrees entered in each of these cases and the permanent injunction the court is being asked to enter here. Rather than years of litigation, notice and opportunity for dissenters to be heard, and clearly implicated federal rights, the parties, are asking the court to enter a federal injunction (1)

based on a deal struck by the parties within *seven days* of the filing of suit, (2) after the state actor has apparently, voluntarily discontinued any enforcement of challenged regulation, and (3) without any opportunity for dissenters to be heard. Moreover, the court is being asked to act based purely upon an interpretation of the state regulation without examining, nor even considering, the viability of the federal claim on which this court's subject matter jurisdiction depends.

In any event, even the defendants acknowledge that the general requirements articulated in each of these cases are consistent with *Evans*: the decree or injunction "(1) must spring from and serve to resolve a dispute within this Court's subject-matter jurisdiction; (2) must fall within the general scope of the case made by the Complaint; and (3) must further the objections of the law upon which the Complaint was based." (Defs.' Br. (dkt. #27) 11 (citing *Local No. 93*, 478 U.S. at 525).)

**2. Failure to Establish That Disclosure and Disclaimer Requirements Constitute Probable Violation of Federal Law**

In addition to arguing that the court can enter the injunction without finding a probable violation of federal law, plaintiffs argue that such a finding has been more than met because GAB 1.28 is facially unconstitutional after *Federal Election Commission v. Wisconsin Right to Life, Inc.* (*WRTL*), 551 U.S. 449 (2007). This argument also fails for at least two reasons.

*First*, plaintiffs' reliance on *FEC v. WRTL* ignores the Supreme Court's later treatment of disclosure and disclaimer regulations in *Citizens United v. Federal Election*

*Commission*, 130 S. Ct. 876 (2010). In that case, the Court unanimously[2] upheld the constitutionality of similar regulations contained in the Bipartisan Campaign Reform Act. As the court explained, "[d]isclaimer and disclosure requirements may burden the ability to speak, but they 'impose no ceiling on campaign-related activities,' *Buckley* [*v. Valeo*], 424 U.S. [1,] 64 [(1976)], and 'do not prevent anyone from speaking,' *McConnell* [*v. Fed. Election Comm'n*], 540 U.S. [93,] 201 [(2003)]." 130 S. Ct. at 914. As a result, these requirements are not subject to the strict scrutiny standard urged by plaintiffs, but rather reviewed under "'exacting scrutiny,' which requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." 130 S. Ct. at 914 (citing *Buckley*, 424 U.S. at 64, *McConnell*, 540 U.S. at 231).

Indeed, the Court in *Citizens United* expressly rejected plaintiffs' very argument here -- namely that *WRTL*'s distinct treatment of express advocacy (and its functional equivalent) as compared to issue advocacy should be extended to disclosure and disclaimer requirements:

> Citizens United claims that, in any event, the disclosure requirements in § 201 must be confined to speech that is the functional equivalent of express advocacy. The principal opinion in *WRTL* limited 2 US.C. § 441b's restrictions on independent expenditures to express advocacy and its functional equivalent. Citizens United seeks to import a similar distinction into BCRA's disclosure requirements. We reject this contention.

[2] While the justices' views varied widely with respect to the constitutionality of other provisions of the Act, all joined Part IV of Justice Kennedy's opinion.

*Citizens United*, 130 S. Ct. at 915. In rejecting this argument, the Court explained that "disclosure is a less restrictive alternative to more comprehensive regulations of speech." *Id.*

So, too, here. While GAB 1.28 may or may not violate the First Amendment as written, this court is unable to find a "probable violation" without an examination of the government interests at stake, the extent of the actual impingement on plaintiffs' First Amendment rights, and careful consideration of the Supreme Court's earlier pronouncement.

*Second*, the court is not even being asked to act upon a probable violation of federal law, but rather on a violation of state law. This is a task far better and more appropriately handled first in the state system, particularly where such proceedings have already begun. *See Kucharek v. Hanaway*, 902 F.2d 513, 517 (7th Cir. 1990) (noting that "an important difference between interpretation of a state statute by a federal court and by a state court is that only the latter interpretation is authoritative").

### 3. Abstention and Stay of Proceedings

In light of the decision to decline entry of the proposed stipulated order, this court further finds that an abstention and stay of any further proceedings in this case is appropriate under *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496 (1941), pending a determination of the validity of GAB 1.28 in state court. *See also SKS & Assocs., Inc. v. Dart*, No. 09-3461, 2010 WL 3363493, at *2 (7th Cir. Aug. 27, 2010) ("Under established abstention doctrines, however, a federal court may, and often must,

decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts and their ability to resolve the cases before them.").

Under the *Pullman* doctrine, abstention is appropriate when: (1) there is an unsettled question of state law; and (2) the state court's resolution of the unsettled question may eliminate the need for the federal court to reach the federal constitutional issue, or at least materially change the nature of the problem.[3] *Pullman*, 312 U.S. at 501. *See also Jordi v. Sauk Prairie School Bd.*, 651 F. Supp. 1566, 1578 (W.D. Wis. 1987) (holding that abstention under the *Pullman* doctrine was appropriate because "a decision on plaintiffs' claims would require this court to determine the constitutionality of various sections of Wis. Stat. § 111.70, and since it appears likely that abstention in favor of the proceeding before the Wisconsin Employment Relations Commission concerning the Sauk Prairie fair share agreement may eliminate the need to decide this issue or substantially alter it").

Both elements are met here: (1) the validity of GAB 1.28 is unsettled, and (2) if it is found to be invalid, such a finding would resolve plaintiffs' First Amendment claims, thereby avoiding the need for this court to reach these claims. If the state court

[3] In determining whether abstention is prudent under the *Pullman* doctrine, the Seventh Circuit has focused on whether the state statute at issue can be narrowed through state court interpretation. *See Time Warner Cable v. Doyle*, 66 F.3d 867, 884 (7th Cir. 1995) ("*Pullman* abstention may be applied so long as two requirements are met: 1) there is some risk that the state statute will be found unconstitutional unless narrowed; and 2) there is some reasonable chance that the state statute can be narrowed through interpretation."). To the extent that this test differs from the one articulated above, its elements are also met here. There is some risk that GAB 1.28 will be found unconstitutional, as well as a substantial chance that the state court will interpret it in such a way as to limit its application to express advocacy or to strike certain aspects of it as invalid.

determines that the regulation is valid (and G.A.B. decides to enforce the language at issue), plaintiffs may return to federal court at that time for resolution of their federal constitutional claims. As the Seventh Circuit explained in *Moses v. Kenosha County*, 826 F.2d 708 (7th Cir. 1987),

> a court abstaining under *Pullman* does not dismiss the action; it retains jurisdiction of the federal claim pending the state court's decision on the state law issue. That way, if the disposition of the state issue does not resolve the controversy between the parties, the federal court can rule on the federal constitutional claim.

*Id.* at 710. *See also England v. La. State Bd. of Med. Examiners*, 375 U.S. 411, 415-16 (1964) ("[Abstention's] recognition of the role of state courts as the final expositors of state law implies no disregard for the primacy of the federal judiciary in deciding questions of federal law. Accordingly, we have on several occasions explicitly recognized that abstention 'does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise.'") (internal citation omitted).

Although courts have been reluctant to abstain from facial challenges involving free speech violations, *see City of Houston, Tex. v. Hill*, 482 U.S. 451, 467-68 (1987), the concerns underlying this general reluctance are not present here. The broad temporary injunction already entered by the Wisconsin Supreme Court, which enjoins enforcement of all newly-added language to GAB 1.28, including the language at issue here, protects any threat to plaintiffs' constitutional rights pending final resolution of the state issues. And, as indicated below in the Order, plaintiffs are free to refile their motion for preliminary injunction if that court were to dissolve its temporary injunction.

Abstaining and staying this case also gives G.A.B. plenty of time to remove all shadow of doubt through further rulemaking. *Time Warner Cable v. Doyle*, 66 F.3d 867, 885 (7th Cir. 1995) ("[T]he Wisconsin agency may determine that the Wisconsin statute is either invalid or that it is not violated in this particular circumstance. Just as in [*Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 512 (1972)], the state agency's determinations in this matter could completely modify or render moot the federal questions raised by Time Warner.").[4]

**4. Threat of Harm**

Plaintiffs request that the court proceed with their motion for preliminary injunction if the court decides not to enter the proposed stipulated order. (Pls.' Br. at 15.) The stipulation also provides that plaintiffs may refile their motion for preliminary injunction if the court decides not to enter the stipulated injunction. (Dkt. #22-2 at ¶ 2.) Even if the court had elected not to abstain, there is simply no threat of harm to warrant reinstatement of and a decision on plaintiffs' motion for preliminary injunction.

The terms of the temporary injunction issued by the Wisconsin Supreme Court are broader than those sought by the parties in their stipulated order: "IT IS ORDERED that to preserve the status quo, the respondents are enjoined from enforcing the amendments to Wis. Admin. Code § GAB 1.28 published on July 31, 2010, pending

[4] G.A.B. has already hinted in a filing in another case, that rulemaking may resolve all issues. Defs.' Br. in Support of Mot. to Abstain and Stay at 9-10, *Wis. Right to Life, Inc. v. Myse*, No. 10-C-0669 (E.D. Wis. Aug. 30, 2010) (dkt. #23) ("The resolution of those state law issues could ultimately lead G.A.B. either to change its understanding of the meaning of the rule or to engage in additional administrative rulemaking to clarify that meaning and/or to correct any problems in the current language of the rule.").

further order of this court." *Wis. Prosperity Network*, slip op. at 2 (Wis. Sup. Ct. Aug. 13, 2010). As long as the temporary injunction in *Wisconsin Prosperity Network* is in place, there is no threat to the free speech rights of plaintiffs in this action and, therefore, no need for this court to entertain such a motion.

Moreover, G.A.B. seems to be backing away altogether from enforcement of the language of newly-amended GAB 1.28 at issue: "Because the defendants/respondents clearly have no intent to defend the validity of that sentence, there is no chance that the Wisconsin Supreme Court is going to be making a decision on that issue that would be contrary to the terms of the Stipulation and proposed injunction in the present case." (Defs.' Br (dkt. #27) at 19.) This statement renders empty any threat of harm to plaintiffs here; it even calls into question whether a case or controversy exists at this time. For now, however, the court will not dismiss plaintiffs' action, but will rather stay any proceedings until resolution of the validity question in state court.

ORDER

IT IS ORDERED that:

1) entry of the parties' proposed stipulated order (dkt. #22-2 at 4) is DENIED;

2) plaintiffs' motion for preliminary injunction (dkt. #9) is DENIED without prejudice to refile at a later time if the temporary injunction entered in *Wis. Prosperity Network v. Myse*, No. 2010AP001937 (Wis. Sup. Ct. Aug. 13, 2010) is dissolved or otherwise amended; and

3) any and all further proceedings are stayed until the Wisconsin Supreme Court determines whether to accept the petition for original action in the *Wis. Prosperity Network v. Myse*, No. 2010AP001937.

Entered this 12th day of October, 2010.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge